The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, please be seated. I can't believe that this many people would be interested in this case, which is so procedural. I mean, not welcome at all. All right, we are hearing Griffin v. North Carolina Board of Elections and Mr. Broad will hear from you first. Good afternoon, Your Honors, and may it please the Court. My name is Nick Broad. I'm in the North Carolina Department of Justice, appearing on behalf of the State Board. Judge Griffin's extraordinary request to retroactively change long-standing election rules and thereby disenfranchise more than 60,000 North Carolina voters should confront the federal civil rights laws in a federal forum as Congress intended under Section 1443-2. Well, before we get to the merits, take us through the procedure, because I think the procedure is highly complex, and since you briefed it, the Supreme Court of North Carolina has dismissed it with a prohibition. That was the case that was trying to come before us, and they have reserved, I guess, jurisdiction to the extent that we should stay. That's correct, Your Honor. And they remanded it to the State, and I gather the State is proceeding on an expedited basis as a Supreme Court order. That's correct. Okay. That procedural posture is completely correct. The North Carolina Supreme Court's January 22nd order, I think, hopefully clarifies things. It, as Your Honor mentioned, continues to enforce a stay of the Certificate of Election in this case, and then defers to— We had a removal. We had a district court that remanded the case to State court, sent the letter, was received by State court, which effectively gives the case back to the State. That's right. You have sought to reappeal that order to us. That's right. So the first question is, if we're going to look at the case as some kind of race, or yes, it's before the State court right now, apparently. Now, if we were to grant all your relief and say the court committed error, we would have to send it back to the district court, and we would have to say something to the district court, because they don't have the case. And the question is, does the district court have the power to go before the—to ask the—well, in this case, it would be the Supreme Court, because the Supreme Court is the only case that was before us in this case, in this appeal. So the Supreme Court proceeding is now and did accept that there's a surviving stay order, right? So now, if we grant all your relief, what do we tell the Supreme Court of North Carolina, or what do we order the district court to tell? Let me see if I can try to clarify some of these procedural issues. So there were two cases that Judge Griffin filed in the State court. He filed one case as an original action framed as a writ of prohibition in the North Carolina Supreme Court. And then he filed another case, effectively another case, as an original matter in the State trial court. Both of those orders were removed. Both of those cases were removed by us to the federal district court. Both of them were remanded. That's what I wanted to clarify, that we only have here the Supreme Court case. The appeal from the—the district court sent it back to the Supreme Court. Right. The Supreme Court dismissed it. Right. That's on appeal. Just that order is on appeal in this case right now. That's a number of 2,000—1,018.  And the attached cases. That's correct. And then number 251020 is the appeal from the State trial court order. And that's not before us right now. Technically, it is not before the court right now. It's before our court, but it's not part of this proceeding. I agree that it's not strictly part of this proceeding. I mean, I think the reason the Supreme Court's—the North Carolina Supreme Court's January 22nd order is helpful in clarifying is that it shows that the North Carolina Supreme Court effectively is treating this as just sort of like all one ball of wax at this point. Well, they can. But if we look at it, that this case only involves an effort to reverse the remand to the Supreme Court of North Carolina. The Supreme Court of North Carolina got it back, dismissed it. In the meantime, we've got an appeal on that. So let's assume we grant all your relief. What do we tell the district court to grab? Because the North Carolina Supreme Court dismissed it and sent it back to the State court. Well, the North Carolina Supreme Court is continuing to enforce a stay of the certificate of elections, which we all obviously are disputing. And the stay order, just to be clear—I checked this, but I want to make sure I got it right. The stay order is entered in and only in the rate of prohibition actions. They did not enter a stay order in the Wake County actions, right? That's correct. That's correct. So there is still an order that is live in this case.  So let's take that where it is. Can I deal with one question? It sounds like an argument you were going to make, and I'm maybe misinterpreting what you're going to make, is that aside from the effect of the stay, while the Wake County case that was removed is not technically before us now, it's the same parties and the same issues. So you were going to ask us, I think, to address that, even if it's not technically permissible. And I'm not saying whether that's a good or a bad argument, but that's what you were going to say. Is that correct? Yes, that's absolutely correct, Your Honor. This is effectively the same case. It's the same board order. It's the same parties. The difference would be the procedural difference, which may matter, number one. But the other thing is at least based on a motion to intervene, there are different parties as of this point in time. Is that correct? That's correct. Okay. Yeah, that's correct. And appeals were taken, separate appeals were taken, one from the remand of the state case, the lower court case, and the other from the remand to the Supreme Court. And the only one before us on which there were motions to expedite and to stay is this one. Well, so we did move to stay in 25-10-20. I want to be clear about that. So we have pending motions to stay in both of these cases. But Judge Niemeyer is right. This is the only one anyone moved to expedite. That is correct. That is correct. So I get back to my original question. If we somehow are able to issue some kind of an order directed to the Supreme Court of North Carolina and say give us the case, we get a case that's been dismissed and in which there's a stay order. Is that it? I think my argument is going to be the most persuasive if the court is thinking about 25-10-18 and 25-10-20 as being effectively.  We don't have it before us. I mean, procedurally, we don't have it before us right now. No one has filed an opening brief, for example. No, I appreciate that. I mean, I think whatever the court does in this case, I mean, I think how the district court handled this may be helpful. I mean, the district court in this case entered a remand order with detailed explanations in this case and then effectively remanded the state trial court proceedings for exactly the same reasons. We can criticize it all. And for my questions, I'm accepting your notion that you get ultimate relief. That's my hypothesis. We can discuss that in a minute. But starting with the notion that you get all the relief, we say the remand order was erroneous. We have to say something to the district court, instruct the district court what to say to the North Carolina Supreme Court. So let's say they make a request to the North Carolina Supreme Court, please give us the case back. North Carolina, what do they send back? Do they send back a stay order? So if we're putting aside my argument that we can treat these two different proceedings as functionally the same. We have to set it aside. I'll set that aside. Yes, I mean, I think the North Carolina Supreme Court is continuing to exercise jurisdiction over this case. It entered an order in this case that's ongoing, that's still in place today, that is staying the certificate of election. I think it reserved the right on the prohibition. I think it denied it, altogether saying that was an inappropriate procedure, that the process is extraordinary, and that the normal process for trying the case and appealing is the right process. So that is gone. That prohibition case is gone. It's not coming back in any sense. Your Honor, I mean, as I understand the order, the Supreme Court dismissed the writ of prohibition. And it does not say with or without prejudice, does it? It does not. It does not. And it orders the court to proceed expeditiously. Yes, yes. I mean, we're trying to understand exactly what that means. It may mean there's a lot left. It may mean there's nothing left, but your position would probably be there's as much as you could possibly say, because that helps your argument. And then you would also say these are functionally the same, and you would stand on your briefs and say, I don't need to argue anything else, correct? Yes, that's right. That's right. Can I ask you one question about that? You know, so this recurring question of what happens. Okay, so case goes to district court. Let's say it's removed. Case is removed to district court. District court remands. We're under one of these situations where you can appeal the remand order, which there's a variety of situations where you can do that. Like, first of all, this feels like this is not the first case in the history of time where this has come up, because it seems like it came up in Quackenbush, and it seems like it's come up in some other cases, too. But second of all, like, assume for the sake of argument we were to think the district court was wrong in remanding the case. I mean, isn't the immediate outcome the district court has jurisdiction over this case? Now, what the North Carolina courts choose to do or will do or won't do or, as a matter of comedy, will agree to do, like, we would just be telling the district court, you were wrong when you dismissed this case, right? And you should go again. You should keep going. Now, the state courts will do what they will or won't do. Maybe they'll stop. Maybe they won't stop. But, I mean, I agree there are potentially complicated remedial questions down the line if the state court essentially doesn't acquiesce. Right. But that's actually different from the question of what should the district court do, right? Right. I completely agree with that. And, you know, we're sensitive to the fact that when a case transfers forums, it does raise some comedy issues. And so what we're trying to do is be respectful of those difficult comedy issues that arise in these kinds of situations. And I think by requesting the case back from the state trial court, the district court can work collaboratively with the state court. Well, let me rephrase this. I mean, I certainly agree it's a matter of comedy in that world. The district court should tell the state courts it has resumed jurisdiction of the case. But in terms of the district court having power to act, it could just act, right? Like if this court were to tell the district court you actually have jurisdiction and you were wrong to decline to exercise it. So exercise that jurisdiction. Does the district court need the state court's permission to act? I don't think the district court needs the state court's permission to exercise the federal jurisdiction that it has. But you apparently do because you asked in your stay motion for us to tell the district court to bring it back. So maybe you're changing your view now, but you seem to have thought more was required when you filed your briefs. I think we're just trying to be sensitive to the comedy concerns here. The comedy concerns was my question initially. What does a federal district court tell the Supreme Court of North Carolina to do with a case in which the Supreme Court of North Carolina has dismissed it? Your Honor, I think because there is a continuing ongoing stay in which the North Carolina Supreme Court is continuing to exercise jurisdiction over this case. I understand. I'm going to assume everything you're saying is correct. We get the case back from the Supreme Court of North Carolina. We have a case in which a writ of prohibition was filed. The North Carolina Supreme Court dismissed it. What do we do with it? Do we review the Supreme Court's motion to dismiss the prohibition writ? It was just done on procedural grounds. Your Honor, I mean, I think at a minimum what would happen is the stay would come back to the district court and the stay would be the district court's own. It would be an interlocutory order that the district court could proceed with as it sees fit. It could modify it. It could enforce it. It could lift it. The parties obviously disagree. Supreme Court says we don't care. A stay is meaningless because we're not continuing to do anything. So, Your Honor, I don't think that a stay is functionally meaningless in this case at all. I think it has very real implications for the way that this litigation is. You would ask us to have the Supreme Court take the case back and then we would have to reverse the North Carolina Supreme Court's dismissal order and stay order. Because the stay order is a legitimate order issued by a court. Your Honor, I think my position is that the district court's remand order here was incorrect. I understand. I'm accepting it. I'm going steps further. I think I see. I mean, I don't want to fight you on sort of putting 25-10-20 aside, but I still think that this case exists. I mean, there is an ongoing order in that case. We will have pulled back one case in one court, if you're right, which is the proceeding in the Supreme Court of North Carolina. We pull it back. What have we got? We have a case in which there is an order entered by that court saying the prohibition was procedurally inappropriate, number one. And number two, the stay continues. And number three, the case goes back to the lower court and they should expedite. Now, the only thing you could have us do with that case is to reverse the Supreme Court. Your Honor, I think I see it a little bit differently. I mean, I think from my perspective, if the stay came back, the stay would effectively be an interlocutory order that the district court would own, and the district court could decide to proceed how it wanted from there. I mean, the stay is contested. It's entered in a case that remains ongoing. And as I said, there are also ongoing trial proceedings in state court, which are also the subject of these removal and remand disputes. All right. I don't know if we — It's a complicated issue. It's a complicated issue. I appreciate that. This probably would flunk everybody in the class in federal court. This is a very difficult federal court. Could I ask you, it seems to me that in this typo, where district court remands case, it goes back to state court, no stay of that remand order is ever entered. Appellate court later reverses district court. Again, this simply has to have come up before. Now, my sense is that in the normal case what happens in that situation when there's been an appeal, the state courts as a prudential matter just don't do anything while that is on appeal. I've had some cases involving federal officer removal where it seems the state courts just literally didn't do anything. But it strikes me that it has to be the case there have been cases where the state courts have done something. Have you been able to find those cases? And what has happened in those cases? So I think if my memory is correct on this, the First Circuit's decision in Cadence Education did involve a situation where there was an improper remand order under Burford, and there were some degree of proceedings. It's not going back. They say there's some degree of proceedings. It's not what proceedings. It's not. And so I think that's helpful. It's a helpful data point in this case. I appreciate that it's not perhaps the kind of proceedings that we have here. The First Circuit case, and I don't remember it, I've looked at several of them, one of the cases where they clawed it back, so to speak, to the federal court, was before the letter had been sent by the district court to the state court, which effectively transmits the case back to the state court. There's one circuit, I think it's the Third Circuit, said once it's sent back with that letter, we lose authority. The feds lose authority. There is another case, I think, that says, and I don't know what the status was of the letter, is a clawback asking the state court to send it back. There's another question is whether we have the power, notwithstanding the views of the state court, to say bring it back, and regardless of the time, whether the letter is sent or not. And I'm not sure there's a good answer to that at this point. I don't think there's any question that this remand order is subject to appellate review. I mean, it's a 1447B. We've gone past that. You don't need to waste your time on that at this point. Okay. We have jurisdiction because the remand order was involved in abstention.  And as you know, the removal is protected only in a couple of cases.  So we agree with you there. Okay. Now the question is the remand was effected. The case was sent with the letter transmitted and received by the clerk of the state court, which is the procedural mechanism to get it there. Now, in that status, I think the courts have said different things in the different circuits, and I don't think the Supreme Court has spoken. But one court, the Third Circuit, says we don't have the power once it's there. I think the First Circuit says, but I thought in the First Circuit it was before the letter had gone, and they sought a stay at that point, and it was given effect. I may be wrong on that. But I think these different contingencies may affect the power of the federal court. But I've assumed for purposes of my question that we have the judicial power, the federal power, to grab the case back regardless of what the state court thinks. Okay. So we have grabbed back the Supreme Court case now, back to us. And in that case, there's an order dismissing, and in that case, there's an order staying. Now, the federal courts are going to look at that, and you would have us apparently in the federal court reverse those orders. Your Honor, I don't think that we're asking this court or the federal district court to reverse anything. Well, then there's a dismissal order in that case. It's not illegitimate, and there's a stay order in that case. This is the Supreme Court of North Carolina, the highest court. I think I may have given you the best answer that I have given the various procedural complexities here. I mean, I think our position is that because a stay order remains in effect in this case, a stay order of the North Carolina Supreme Court is continuing to enforce. It's continuing to exercise jurisdiction in this case. We've just snatched it away under my hypothetical. We have pulled it back under federal power, the supremacy clause. We've pulled it back to the federal court. We go back to the district court. We say to the district court, you now have the writ of prohibition case. Right. Now that case is in the district court, the writ of prohibition from the Supreme Court. In that case, there are two orders. It's actually one order that covers several different things. One aspect of that order is the case is dismissed, and another aspect is that the certification of the election is stayed until the state court can proceed. Now, the district court has that case. Tell me what the district court is going to do with it. I think the district court resumes jurisdiction, the stay becomes its own, and then we bring in the state trial court proceedings, which are the subject of the other appeal in 25-1020. I mean, I think that's the best answer I have. You know, I appreciate that this is a strange procedural posture, but I think the way the North Carolina Supreme Court's January 22nd order and the way— If you leave it in place and it stays in effect, this is all a lot to do but nothing. Well, I mean, again, it's why I'm coming back to the state trial court proceedings and— You already have that order in the state court now. No, I appreciate that, and I think, you know, I think our position is that the North Carolina Supreme Court's January 22nd order is effectively treating all of these cases as the same thing. The district court did that, and anything that you reason about in this case, about the propriety of the remand order, is necessarily going to control the propriety of the remand order in the state trial court case. You've gone through the red light about 16 times, and we haven't given tickets yet. And quite apart from that, we have cut you off on all your other arguments because of the procedural issues. Why don't I give you two minutes to address the Burford issue as to whether that was— because that goes a little bit to the heart of the action the district court committed, right? It does. It does. Yes, I appreciate that, and I will try to keep it to two minutes. Our main position on Burford is that Burford abstention is categorically inapplicable in cases removed under Section 1443. The text of Section 1443 reflects a policy choice that Congress made in the wake of the Civil War to ensure that state officers sued for refusing to take action that would violate federal civil rights have a federal forum in which to litigate those very important federal questions. Well, that assumes, of course, that we're talking about civil rights, federal rights, and rights that are enforceable. And, of course, the statutes here in North Carolina parrot the federal statute involved. But if you were really being fair—not you, but any person being fair— would look at the case, they would say that Griffin brought this case under three North Carolina provisions challenging the vote count, under three statutory provisions. Everything else is fallout from that. Whether it's enforced, is it unconstitutional to violate due process, does it violate civil rights? But they were brought under North Carolina statutes in a North Carolina election. And even though the same provisions are in the federal law governing federal elections, we're still talking about three North Carolina provisions governing the North Carolina election. And so I hear what you're saying about the civil rights, which is all obviously very important. I mean, it's probably fundamental. But the question is, whose law are they? Well, so our argument under 1443 is that our refusal is based on the NVRA. And this court just a couple of months ago held that the NVRA— I was just talking about that. Let's assume that we're addressing the North Carolina version, which is Parrots, the federal. But the allegation here is a citation specifically to North Carolina law saying those three provisions were not followed. And Griffin wants those provisions applied under North Carolina law. It Parrots federal law, and we may be able to look to it. And it may even affect federal law to some extent because North Carolina wants the two to be enforced in harmony. But do you understand my question? I think I do. I mean, I think what I would say is this court's decision in RNC has effectively resolved this question, which is that in RNC on very similar facts. So that RNC says a lot about whether the removal was proper and whether it determines that we can decide. It says a lot. I grant you that. But it doesn't say, and I'm not aware of a court that has said what you led with on Burford, which is you cannot categorically abstain under Burford or presumably any other abstention doctrine if you have a 14432 removal. I mean, quite frankly, the citations, I'm a little frustrated, not just at y'all but at the other side about what you said about the cases because I don't think it's fair to say that Jamison does what y'all say it does. But anyway, you got Jamison, you got Greenberg, and those seem to be the only cases that you cite for the proposition that you just articulated. I don't think either of them do that. I understand the logic behind your point. I think it's interesting and maybe has some merit to think about with that argument. But just first of all, I mean, Greenberg is a dick that wasn't even raised by the partners. Jamison didn't even talk about abstention. So can we agree that there's not a case that says what you said? Well, so if I could make maybe a couple of modifications to the cases. I mean, I do want to make sure Kolobosh gets thrown into the conversation as well because Kolobosh is a 1442 case, and I do think pretty clearly involves abstention. It's an opinion by Judge Wilkinson, and it holds that abstention is, at least as I read the decision, that abstention is categorically inappropriate in 1442 cases. And I think a big part of our argument rests on convincing you that 1442 and 1443 are extremely similar. Well, isn't it helpful that BP basically says they're indistinguishable for removal purposes? Exactly. BP says that. I mean, the text is similar. The structure of the provisions is similar. They have some similar historical antecedents. And so I think, you know, if you accept that Kolobosh has recognized that abstention doctrines tend or are categorically inapplicable in 1442 cases, I don't think it's that big of a jump to conclude that, as in the 1442 context, abstention is a poor fit with 1443. I mean, I do think that that goes. Because otherwise, can I just follow up there? I mean, your point kind of has to be that because otherwise you're in the abuse of discretion world, and you're saying we don't even get to weigh that discretion to see whether it's in abuse. You're saying it's a showstopper, it's disremoval, we can't do anything. Can I ask you about Jameson? You're relying on this language that says when a case has been properly removed under 1442, the district court may remand it back to state court only if it discovers a defect in removal procedures or lack of subject matter jurisdiction. That's the language of Jameson you're relying on? No, I don't think so. I think there's a discussion in Jameson about how abstention is inconsistent with removal under 1442. That's the last paragraph of Greenberg, I think. Well, Greenberg certainly says, I know Greenberg certainly says that in its last paragraph, but I believe that Jameson says that. Oh, yes. So is this the language you're referring to? As we said in Kolobosh, the removal jurisdiction granted by 1442, which is designed to protect federal employees, is mandatory, not discretionary, and a district court has no authority to abstain from the exercise of that jurisdiction on any ground other than those specified in 1447. Yes, that's the language we're relying on. Do those cases assume that the removal is under a federal discrimination statute? Jameson and Kolobosh are removal cases under 1442. They're federal officer removal statutes, and as I mentioned to Judge Quattlebaum, I think my argument depends on your accepting the idea that 1442 and 1443 are substantial. That was a healthy two minutes. I'm so sorry. We'll have you back. Thank you. I think next we hear from Mr. Hartzell. May it please the Court, Sam Hartzell for Justice Allison Riggs. Thank you for hearing us today on an expedited schedule. I'd like to emphasize two points today. One, that this case arises under federal constitutional law, and two, that separate and apart from 1443, the district court erred by abstaining. But before turning to those two points, I'd like to begin with the questions, Your Honor. Well, can I ask you, I want to let you get to 1441, but do you agree, I've been thinking about this, and I can't, if removal is proper under 1443, is there any reason the answer to the 1441 question matters? No. Under Hammer, the Seventh Circuit's decision, they left open the possibility that there might be extraordinary, unforeseen circumstances that would justify extension. This is not that case. No, I know, but I'm just saying, if we conclude that removal was proper under 1443, is there any need to reach the question of whether removal was proper under 1441? Removal, no, but the district court's failure to recognize the important federal constitutional law implicates Burford analysis, I get that. Okay. And not just implicates the Burford analysis, but the decision to even engage in that analysis, because all abstention doctrines begin with discretion. That is, Judge Griffin has to be asking the court to issue a declaratory judgment, or to exercise equitable discretion, perhaps, to issue an injunction. That's not what's happening here. What's happening here is the state board denied or rejected Judge Griffin's protest under federal constitutional law, under the substantive due process violation. At that point, what was once a potential federal defense turned into a concrete obstacle to relief here, an element of any claim that would seek to overturn the board's decision. And, you know, as I understand what Judge Griffin's likely to argue today, he's going to say that I'm focusing on the wrong time, that what matters is what was a claim, what was a defense, when the protest was filed. I think I got all wrapped around the Axel Reid race. When you say the protest, do we mean the procedure before the board? Yes. Prior to what the board's rejection of those protests. I guess what I'm finding easier to think about is that's the board phase, as opposed to the court phase. That's critical because if there's one case that I would point your honors to, it is the Second Circuit's decision in Freeman, discussed in our brief at length, pages 17 to 20. There, the Second Circuit panel, including then-Judge Sotomayor, wrestle with this timing question. And they hold, albeit under a different federal defense, that a case arises under federal law when, quote, a litigant's initial entrance to a state court seeks a decision that an administrative ruling upholding a federal preemption defense is erroneous, close quote. They go on, quote, the state court plaintiffs want not only a decision on the preemption defense, they want a court to reverse an adverse administrative ruling that is grounded on federal law, close quote. That's what happened here. In this action, in this lawsuit, in the post-board phase, they can't get from here to there, throwing out votes without a court reckoning with the federal constitutional issues. And that, Judge Niemeyer, is why the Supreme Court's order here can't be controlling. Because as you say, they dismissed it on state procedural grounds. Well, I'll tell you what my problem is on that. If you just take a common sense reading of the well-pleaded complaint, Griffin pleaded before, he protested under three North Carolina provisions, and said each of those was violated during the election, and therefore the votes that violated that in the state election should be discounted. That is the core of the allegations made in all of these cases that are before us. Now, how that blossoms into federal issues and federal discrimination and removal of a, especially in removal area under 1441, it violates the whole line of removals unless the essence of the state claim is a federal claim. It's sort of like field preemption. It's the notion that even though the pleader didn't call it a federal claim, it is essentially a federal claim. That's where the removal comes in as the exception. But this case doesn't pretend to do that. This case, he raised those three points. They were denied, and this is now going to the state, it's in the state superior court, litigating whether the North Carolina law is appropriate. The question of whether by defense that somehow violates federal law, that's a stretch. And it's a stretch because the best you get is North Carolina says it wants to interpret its statutes parallel with the federal statutes, and they use the same language as the federal statutes, but they are still laws made by different legislatures, the federal by Congress and the state by the North Carolina legislature. And so the only claim made here was under the North Carolina statutes. Now, the implications under the federal constitution have to be mighty strong somehow to say that those statutes are unconstitutional, or I don't know what you make of them. I think the argument has been that since there's a unity of language, therefore, somehow the federal is implicated. But I must say, I sort of share Judge Hyten's question with you, is that to me is a dicier analysis than the analysis under 1443, and I'm not sure why you would, I know you want to press it, but it's been made, but it seems to me it's sort of collateral. I understand that, Your Honor, and I would, Freeman does address that exact issue, and I would concede that before the board at the protest stage, there's a good argument under the well-pleaded complaint rule that Judge Griffin is not bringing a federal claim at that point, but there was no lawsuit at that point. Judge Griffin could not go into court, state or federal, at that point. His first opportunity to go into any court, state or federal, was after the board's decision. At that point, there's no way to ask a court to reverse that decision without grappling with the federal constitutional issues. I don't understand that. You make that assertion, but I think the court, a superior court, could easily say this is what the North Carolina legislature meant. We are persuaded by interpretations of the federal law, but we're not bound by them because this is a North Carolina law, and go that way. You're already three, almost three and a half minutes. Can I ask you one question about this? And that's to tell us a little bit about the nature of the procedures in the North Carolina courts. And let's just go to the Superior Court of Wake County, how this works. How good or bad is the analogy to federal judicial review of federal administrative actions? So, for example, where we have things like the final order, I'll give you three things, for example. When a federal court is securing a petition for review from a federal administrative agency, you're not allowed to receive evidence that wasn't before the agency because that's not how judicial review of an agency actually works. You're not allowed to do that. You're not allowed to supply a reason the decision-maker did not give. That's SEC versus Chenery, and there was a third that I've forgotten. Do those restrictions apply in this context? In Wake County, and I mean this literally as a question, can you introduce evidence, and is the court bound by the reasons the board gave? At a high level, they are analogous. I believe the answer is you cannot introduce evidence, but you are not limited to the board's reasonings. I'm not confident in either one of those answers. I am confident in the answer that it's broadly analogous. I'm also confident in the answer that federal courts have the power, if there is otherwise jurisdiction, to review state court agencies. Sure. I acknowledge that I'm over time. I'd be happy to answer any questions. I'd also appreciate two minutes to address the remedial issues that were being discussed before, if that would be okay with the court. The what issues? The remedial issues, what it would look like if this court were to reverse in this case. You mean the same question I asked Mr. Brode? Yes, I'd like to add two quotas to that, if I may. One minute and 37 seconds. The first is, we've been talking about that as having two rulings, the dismissal and the stay. The dismissal under state procedural grounds cannot control a federal court, because when this case was removed, it was transformed into a federal claim under Rules 2, 3, and 81 of the Rules of Federal Procedure. Whatever state procedural defects it had didn't come with it to federal court. The answer in terms of what happens next, regardless of whether you're vacating automatically the Supreme Court's ruling, or it's simply the question is in front of you, district court, answer it. Do you have a case which says that after a case has been remanded, whether correctly or not, and the letter has been sent, and the state court makes a ruling in the case that has been remanded, that we can ignore it or reverse it? Yes. What case? Brian does not hold that, but it contemplates that possibility. The Cadence case from the First Circuit was a post-letter issuing case. But more broadly... Did they reverse something the state court did? No, they remanded it to continue exercising jurisdiction by the federal court. I understand, but the state had jurisdiction to act after we remanded it, and they got the letter. Now, the First Circuit's issue was whether we can get that case back after that point. We can get it back, because I've assumed that for purposes of the discussion. I'm not necessarily agreeing with it, but I'm saying for the discussion. But my question is, after we get it back, the state court acted totally legally in issuing orders. And the question is, can a federal court reverse those orders entered by the state court? There's a tension here, because I agree with you that, as things currently stand, the Supreme Court acted legally. The case has been remanded. My question is, do you have any case where a federal court has reversed a state court after it's remanded, and it came back? I couldn't find any myself. But I do think that speaks to the importance of the remedy in the second case, 1020, because next Friday, the Wake County Superior Court is going to be hearing these claims. So as of now, the issue that you're describing, Your Honor, is not present. But in two weeks' time, it may well be. The final point— I understand that's the goal. But now, in order to stop the state court, we would have to reverse— I mean, we only have the Supreme Court case, or whatever's left of it, before us, potentially. And the question is, now it's been snagged back, under whatever theory we're talking about, pulled back into federal court. Do we ignore the orders that were legally entered by the state court before it came back? I do think that they are vacated the moment this court issues a hypothetical reversal. But this does not— But you're suggesting they didn't have the power to do it then. Yes, because if this court were to reverse— I'm not seeing a case to say that at all. It would make that remand no longer effective. I conclude, if I may, by saying the three cases we're talking about here, but principally this case in 1020, are inextricably linked because of the district court's ruling. That is, because it said, for the reasons in the case we're talking about here, one paragraph remand in the second case. So if this court were to vacate a remand, that would, by definition, affect those other cases. I'd also want to highlight— Let me just ask a question. I think it's obvious from your answers. I'm not suggesting we're doing this or even thinking about doing this. If we were to—it sounds like you don't have any argument that you would make in the Wake County removed cases, other than those you've already made in this case. You see what I'm saying? I mean, I know there hadn't been an intervention motion granted, but it would be problematic if we kind of treated something that's not truly the same, and one of the people who's not in that case said, well, I have this other argument I'm going to make. I do not expect we would. We're involuntary participants, perhaps, in that case, but— Excuse me? If we are forced to litigate in state court, there may be peculiar state court arguments, peculiar to that form, but the basic answer to your question is no. We believe this case controls everything else, because this is the case where Judge Griffin brought his claims on for decision, and his decision to then later fracture those into multiple other cases should not deprive this court or any other court of the ability to grant an effective remedy. Okay. Thank you, Your Honor. Thank you. All right. We'll have Mr. Dodge. I'm not going to heavily discriminate against you, but I'm going to try to cut you off if you're going to repeat. I appreciate that, Judge. Good afternoon. May it please the Court. My name is Christopher D. Dodge. I'm here on behalf of the voter interveners. I do want to, with some trepidation, dip my toe back into these remedial issues, because I can tell that they are preoccupying the Court, and they are very important to the disposition of this case today. Just a table set, I want to briefly stress what I think everyone here recognizes, which is that in Section 1443 cases, there is a special and unique mandate from Congress to ensure meaningful federal appellate review. Justice Gorsuch's decision in the BP PLC case goes through the reasons for this in some length. It was discussing 1442, but it was speaking to the same clause of 1447d. There he says very clearly that in Section 1443, Congress has deemed it appropriate to allow appellate review before a district court may remand a case to state court. And so I think this Court needs to look, with a healthy dose of skepticism, at Judge Griffin's suggestion that it is helpless here to provide a meaningful remedy in a case where Congress has expressly said there must be critical federal appellate review. That's like looking at blinders. We have a bigger picture here. We have a bigger picture. We had a remand order. Let's assume it's illegal. Illegal remand order. A letter went. The state has proceeded with the case before it. The district court up to now doesn't have a case. It's in state court. The North Carolina Supreme Court, the highest court of the state, has issued an order. And when it comes back, you would have us interrupt and say that order is meaningless because the remand was illegal. I wouldn't say it was meaningless, Your Honor. And let me offer a few suggestions to try and untie that knot. The first, I think, goes back to something that Judge Hytens alluded to, which is that the temporary stay of the North Carolina Supreme Court only exists in this action. Now, it may make sense to consolidate this appeal with 1020 and issue a common disposition between those and to sort of get these various strands of the cases back together. But at a minimum, this court at some point or some court will have to acknowledge and resolve this temporary stay. If the Wake County cases come back into federal court via the 1020 appeal, there will still be this lingering assertion of jurisdiction by the North Carolina Supreme Court. Now, if that interlocutory order comes back to the district court, the pleading in that case would in fact be the petition. Now, the North Carolina Supreme Court said, well, this petition is an improper vehicle. Once it's back in federal court, one, it becomes a civil complaint under Rule 2. It becomes a vanilla federal civil complaint under all federal rules of civil procedure. It loses its defects that caused that dismissal in the North Carolina Supreme Court. That's the whole problem. Your argument and the previous argument assumed that everything that's happened in the state court after the improper remand is illegitimate. We go back to making it a federal case. I wouldn't. My point is that every single case I've read, every single case where there's a remand, the assumption was that the state court had it, and how do we get it back? In other words, if the state court legitimately has it, we have to respect its orders. I mean, there's a lot of comedy here between a state and a federal court. And even on a federal issue, we have to respect state court rulings. I mean, they can be reversed on appeal. And, of course, the Supreme Court of North Carolina could have been appealed or maybe is going to be appealed to the Supreme Court. That's the old Rooker-Feldman stuff. It doesn't perfectly fit. But Rooker-Feldman basically condemns us for jumping in to a state court process. A couple points, Your Honor. One thing that I think has not been mentioned today that I want to bring to the court's attention is the disposition of the case in Jameson. In Jameson, when this court found that the remand order was in error, it said very plainly, the district court shall resume federal jurisdiction. Now, what actually happened at the district court level is the district court judge in the Western District of Virginia sent a— We resumed jurisdiction, but my question is we're getting back something that has been changed. The North Carolina Supreme Court issued an interlocutory order. It was not a final judgment. It was not an adjudication of the merits. The merits, of course, are pending before this court on the stay motion. And so to use your analogy, Judge Niemeyer, the idea of a res, the res is not yet dissolved before the North Carolina Supreme Court. It did not make any adjudication on the merits of those claims. No, it made a procedural one and said case dismissed. Prohibition is inappropriate. And then it said as a procedural matter, we're going to expedite this in the state courts and let it come up in the normal courts. Another tool at the district court's disposal, if the interlocutory order of the temporary stay were to come back to it, is that under Rule 81 it is entitled to require Judge Griffin, once the case is back in federal court, to replead his claims. No one is disputing that his claims have been resolved here. They haven't been. Of the multiple paths he chose for relief, one has been deemed to be procedurally improper. Let me ask you a question, maybe analogous or not. If we have a case in state court that gets started, goes through discovery, goes through motions, gets through a lot of pleadings, a lot of orders, and then all of a sudden there's an amendment that creates a federal cause of action. The federal law says that case can be removed to federal court, right? Correct. And the federal court takes that case in the status that it was at removal. That's absolutely correct. So that respect for the state process, we don't reverse those rulings. We take it in that fashion and address the federal interests that are created with the new federal cause of action and the removal. That's all pretty well established. Now, the question to me is why would that principle address your point where you're suggesting that we ignore the North Carolina Supreme Court's orders? Well, 28 U.S.C. 1450 says that when a federal court gets a removed case, it takes it as it finds it. The state court orders become federal court orders subject to federal court rules. But Section 1450 also says that the district court has the power to modify and dissolve injunctions and orders of the state court as necessary in that case. And there is some case law on this. I don't have it at hand. There's, I know, a Middle District of North Carolina opinion that basically says it received an injunction up from the state court, and I'd be glad to submit it in a letter if helpful, that once that injunction comes up to federal court and is subject to federal standards, if it no longer meets those federal standards, it dissolves the injunction. And so if you have this interlocutory stay order from the North Carolina Supreme Court and the case comes back to federal court, the district court can consider whether that temporary stay remains appropriate once the case is resumed in federal court. Can I finish the point you were making about Jamison? You said something about what happened to Jamison on remand. Could you just finish that point? Sure. So in Jamison, once this court held that the remand order was improper, what the district court judge then did was it sent a letter to the Tazewell County Circuit Court in Virginia and said, I have this order from the First and Fourth Circuit saying that I erred. Please send the case back. That's what it did. Now, I do not know what action was taken in Alcantara. I did not know what action was taken in the Tazewell Circuit County Court. But I think that is illustrative of one of the tools at the disposal of this court. That's one of the four tools I discovered. One is a letter requesting it back. The other was just snatching it back as a matter of federal question. Another was like the Third Circuit. They say once it's remanded and the letter is sent, they have no jurisdiction. And it's all over the ballpark on that issue. To return to some first principles here, I think if this court does find that the remand order was error, the ultimate remedy should be to try to restore the federal action to the status quo ante prior to the court's remand order. No, no. But that violates the principle that if it was acted on in the state court while it was in the state court, we ignore those orders. And that is a heavy-handed thing. It is. If I may make perhaps a final point, I recognize you've been very generous with time. I would point to the League of Women Voters' amicus brief, which talks about the All Writs Act and the Anti-Injunction Act. I recognize strong medicine. But those are laws that exist for the preservation of federal jurisdiction. And this is a case that calls for the preservation of federal jurisdiction. Can I ask you just one question about the res point you raised earlier? Hasn't this res already been fragmented? Because, well, we're all here in federal court right now. And the same case is also in the superior. Isn't this same case simultaneously already in federal and state court? Your Honor, what I would say at this very moment, I would echo what my colleagues have said, which is that I think there may be good reason for the disposition of the 1020 appeal, what is called in the briefing Griffin II, should be tethered to this one. There should be an effort by this court to essentially reconstruct the res. With respect, it was Judge Griffin who filed a multiplicity of actions in state courts with the aim of evading or avoiding or limiting the prospect of federal jurisdiction. And I don't think that kind of effort should be used. You say multiple. I thought he did his protest. And then he went to the Supreme Court of North Carolina to get rid of Prohibition. And while that's pending, he then started his appeal. He had to start his appeal in the Superior Court. And the Supreme Court said we're dismissing the writ of Prohibition because he has the right of an appeal and let the state trial court go ahead on an expedited basis. But basically he was seeking intervention by the Supreme Court to writ of Prohibition to jump in. The court didn't jump in. Well, that petition asked for relief beyond merely a stay. It asked for substantive relief on the merits as well. I mean, I guess to echo my friend Mr. Broad, the state court has now started to treat this as one action. And I think that is a good reason for this court perhaps to do so with the 1020 appeal. All right. Let's wind that up. You have a question? All right, Mr. Thompson. We'll give you an extra minute. I have to take as much or as little time as the court likes. Thank you, Your Honor. And may it please the court, I'm Will Thompson from Lahotsky Keller Cone. I represent Judge Griffin. This case became moot on Wednesday evening when the North Carolina Supreme Court dismissed the petition for writ of Prohibition. Article 3 moot? Yes, Your Honor. Really? I wish we had a chance to brief this ahead of time. Unfortunately, the mooting action came at the same moment I was trying to file the brief pretty much. And so we'd be happy to submit a motion to dismiss or supplemental briefing as the court prefers. Absent other guidance we'll probably submit a motion to dismiss. I have a couple of cases on this. Your Honor is absolutely right that this is not the first time this has happened.  So the setup here is case filed in the state Supreme Court. It is removed to EDNC. It is remanded back to state court. The remand is effective, but there is an appeal still going in federal court. Before the appeal is resolved, the case is dismissed in state court. With or without prejudice? I believe in the Tenth Circuit it's the – Wait, wait, wait. Hold on. You just told me North Carolina and now you're telling me the Tenth Circuit. I'm sorry. In this case, it happened in North Carolina. Those are also the procedural posture facts of a Tenth Circuit case I'm about to tell you about. My apologies. I don't think, I think as Your Honor alluded to, that the order on Wednesday specified whether it was with or without prejudice. But it doesn't make any difference. Oh, I – let's assume that I respectfully disagree with that. Well, respectfully, Your Honor, my position would be the petition for writ of prohibition cannot come back to life because the state's highest court has dismissed it on state law grounds. Even if I wanted to, I couldn't take a petition for writ of cert up to the Supreme Court on that. Now, the – What about the fact that they are enforcing a mandatory injunction in this case? Your Honor, I disagree with the characterization, but taking the point on – They're ordering someone to not do something on the pain of contempt. That's an injunction. Well, Your Honor, I think if we read the Supreme Court's opinion in the Ken, I think we might say that acting on the proceedings themselves in the quasi-judicial forum that is the state board might qualify as a stay in the contempt act. But regardless, I'd like to say that the stay, I think, is best read as applying in the petition for judicial review case. They're not what they said, though.  Well, Your Honor, I think it's undisputed that that order that was issued on Wednesday applies in the petition for judicial review case because Your Honor has recognized that order orders the Wake County Superior Court to proceed expeditiously with the matters before it. Now, the matter before the Wake County Superior Court is not the petition for writ of prohibition. It's the petition for judicial review that was filed there. So I think no one can dispute on the other side that that order filed on Wednesday – Yes, it does something in the petition for a writ of prohibition. I disagree. Could you tell me what the Tenth Circuit said? Absolutely. So the case is called Dudley-Barton v. Service Corporation International. It's a 2011 case from the Tenth Circuit. The key quote is SCI, which is the appellant in that case, has no material interest in contesting the district court's remand order because plaintiff's lawsuit has now been dismissed. Was there a stay in that case? No, Your Honor. There was not – Did the court that dismissed purport to stay someone from doing something? Not to my knowledge, Your Honor. Doesn't that seem like a really big difference? No, Your Honor, because – From an Article III mootness perspective? Because the stay is not in this case. If I could explain the stay from a practical perspective – I'm not – well, I mean, we're – I take your point, but as the discussion has been clear, a lot of things about this are not from a practical perspective, right? Like, the practical perspective, the Wake County action and this action are basically the same action from a practical perspective. Like, if we're going to be practical, we're going to be practical. If we're not going to be practical, we're not going to be practical, right? I respectfully disagree with Your Honor's characterization of that. I don't think they're the same action. There are obviously a lot of similarities. There are also important differences. And before we move off the point entirely, if we were to have briefing done in the Wake County appeal here, I do think that we would be making slightly different arguments. Some of the arguments would be the same. Is there anything that stopped you from filing a motion to dismiss in the several days since this happened? Well, Your Honor, I didn't encounter the 10th Circuit case until after the close of business on Friday, so I apologize. I haven't gotten it done, but it is Monday afternoon. We raised the possibility of supplemental briefing and postponing the oral argument in our 28-J letter. The other side respectfully disagreed, and we didn't hear anything on that. So I'm happy to proceed. You can file a motion to dismiss any old time you want to. Great, Your Honor. Happy to do so. No, I mean, the Federal Rules of Appellate Procedure say you can file a motion to dismiss any old time you want to. And we will do so if that is the Court's preference on how to proceed on that issue. Can you deal with the point that you made a second ago? Because I assume your position is this the case before us, 2018, and the Consolidated cases are moved. The Wake County cases, which have been removed, are not. It sounds like you have a position, aside from the just technical position, that they're not the same case, but they're different substantively. Can you give me a little bit of a flavor on that? Yes, Your Honor, I think I can. So, admittedly, I haven't seen what the other side is going to brief in that case, but on certain assumptions about what I think they would do, our response brief would probably be a bit different in terms of Burford abstention. So one type of issue that my friends on the other side have raised with regard to Burford abstention is that they don't like the fact that we proceeded in the petition for writ of prohibition directly in the state Supreme Court. Right, that issue's gone. Right, we skipped over the Wake County Superior Court, which under a Burford analysis should be considered the specialized trial court for this kind of matter. Well, of course, in the Wake County Superior Court matter, that's not true. There has been no skipping over of that court. That matter is pending in that court, so I think that strengthens our Burford analysis on that case. There's also the matter of whether this is a civil action for purposes of the removal statute, and I do think we'd have a distinct argument on whether a petition for judicial review of state administrative agency action, qualifies as a civil action. Wright and Miller has a section on this, admittedly not very long, but it does talk about a distinction for matters pending in state court to review state adjudications may not be civil actions for purposes of the removal statute, especially if they have review under a deferential non-de novo standard. So anyway, I realize that's an undeveloped argument, Your Honor, but I do think that would be It's actually fairly interesting because if you think about it, the proceeding in the Supreme Court was not an appeal. It was an action commenced in the original jurisdiction of the Supreme Court, and it was for a writ of prohibition. I don't know if a request for a writ of prohibition is a civil action. It's analogous to a mandamus, and somebody can file a claim for a writ of mandamus compelling somebody to do something. Your argument, I gather, is that it is a distinct action that's been dismissed and there's no action like it. That's correct. So now the question is, your argument about the injunction, is the injunction administrative in connection with the Wake County proceeding?  Or is it in connection with the writ of prohibition? Exactly. So I believe the stay order, as issued on Wednesday of last week, is in connection with the Wake County action. Well, because you say so? I'd love to explain, Your Honor. So before Wednesday, the stay was pending disposition of the writ of prohibition. So if the court hadn't altered the stay in some way, then its dismissal of the writ of prohibition would have effectively dissolved the stay. Obviously, the State Supreme Court didn't want that to happen because it wants to have the Wake County Superior Court hear Judge Gifford's claim. Was there a motion to stay filed before the writ? There was a motion to stay, I believe, included with the writ and renewed upon the remand in the State Supreme Court. Theoretically, it should have had a different file number and a different case number because the motion for stay was directed at Wake County and was relating to the Wake County proceeding. I'm sorry, Your Honor. I may have been unclear on that. What I was talking about, the motion for a stay, was filed as part of the writ of prohibition when it was originally filed with the State Supreme Court. The State Supreme Court, sua sponte, I would say transformed the stay from one pending disposition of the writ of prohibition to one pending disposition of any appeals that come out of Wake County. And, of course, the reason for that is they don't want potentially meritorious claims to be mooted by the State Board certifying the election before the North Carolina judges get a chance to hear my client's claims. So the point of that argument is there, from your perspective, is there's nothing left of the North Carolina Supreme Court proceeding? So, yes, it's twofold, Your Honor. That is one part of it. That's what I would kind of call the formal part of it. The functional part of it is, remember, this appeal is only about the petition for writ of prohibition. And we're assuming, I think we have to, that it's proper for the Wake County Superior Court to currently be proceeding with those actions that are currently before it. If this court, or somehow, ordered the district court to vacate the stay that is the only thing protecting the North Carolina Supreme Court's appellate jurisdiction over the Wake County case, I think there would be a serious federalism front. What they are trying to do is make sure that they have the ability to decide what they're going to do. If we snatched back, I'm now treating the proceeding as a race, R-E-S. So, the race is in the Superior Court. They're trying it on the merits there. If we were to snatch that back to federal court because of an improperly granted remand, then we would be depriving Wake County of jurisdiction. And we would actually be able to enforce that in preservation of federal jurisdiction because of the supremacy clause and the statute, the anti-injunction statute. But that has not happened. But until it happens, if it were to happen, then Wake County would be deprived of jurisdiction and the race would now be back in the federal court. So, there's a lot to unpack there, Your Honor. And I hope I can address every part of Your Honor's question. First, on the Anti-Injunction Act and the All Writs Act, no party to this proceeding has actually sought such an injunction against the state court proceedings. And I realize my friend on the other side just alluded to an amicus brief that raised the issue. So, I think that's not properly before the court. If the court did, for some reason, consider such an action properly before it, I would appreciate the opportunity to brief the matter. On the merits, I certainly don't think the Anti-Injunction Act would allow an injunction against state proceedings here. Well, no, I think there's a very strong, there's a strong layer of federalism all throughout the federal laws and the Constitution, the Tenth Amendment, and all the business. I mean, we respect that. And I think the whole debate here is to try to give dignity to the state courts and its powers as a sovereign, and at the same time, to recognize that if there's a federal issue here, that we ought to be litigating. We can preempt that. We can stop it. Now, that's a generalized statement of all these different procedures we've been talking about all day here today. But, can I turn you to Burford? Sure, Your Honor. Can you identify a case other than this one where a federal court abstained under Burford in a case removed under 1443? Your Honor, I don't think I have that precise statement of order.  But I do have cases saying that I think establishes principle. Hold on. First and foremost, you cannot point to a case before this one where a federal court abstained under Burford a case removed under 1443, right? I have other abstention cases under 1443. Okay, so that's question one. Question two. This court, true or false, has directly held that you can't abstain in cases removed under 1442. Twice. I believe those rulings are overruled by Quackenbush. I've read the parts of Quackenbush you cite over and over again. The issue in Quackenbush is whether you can abstain in cases that law, and the court says no. And twice in Quackenbush, the court says the thing you say, which is all cases. But both times, it comes after saying, right? It says, though we have, this is on page 718, though we've located the power in equity, we've not treated it as a technical rule of equity procedure. Rather, we've recognized the ability to abstain in all cases. That's that. And then you also say on page 730 of Quackenbush, the per se rule described by the Ninth Circuit, however, is more rigid than our precedence required. The per se rule was only in cases in equity. We have not strictly limited abstention to equitable concerns, but rather have extended to all cases. So you agree the issue that we are talking about was not even remotely the issue in Quackenbush. I disagree with that, Your Honor. My position is that the Ninth Circuit tried to create a per se rule limiting the extent of Burford abstention, and the Supreme Court said that was wrong. It does not agree with these kind of per se rules like the ones my friend on the other side are trying to put forward. Okay. You are familiar with this court's precedent about when we conclude the Supreme Court has abrogated our precedent, I presume? I imagine it requires a clear conflict.  Irreconcilable conflict?  About an issue? Right. Okay. So let's take that. So what are these cases that you say have this principle? Assume that I do not buy the Quackenbush abrogation. Well, I think Quackenbush is the best case I have for rejecting their particular claim of per se rules. Okay. Let me ask you this other question. Can you identify any basis, assume for the sake of this question, I know you don't agree with it, assume that we have in fact held that about 1442 and assume that has not been abrogated. Can you give me a persuasive reason why you can't abstain in 1442 cases but you can in 1443? Yes, Your Honor. I think 1442, if that were true. Yeah, I understand. You're not conceding anything? I get it. 1442 would be the exception, not the rule. Certainly it is true that there are countless jurisdictional statutes, both original jurisdiction and removal jurisdiction, where Congress has decided it's appropriate to have federal jurisdictions. Nonetheless, in almost all of those cases, the Supreme Court says there's still the option to have abstention so long as the relief being sought is discretionary. One could easily just say, well, it's 1441 cases. You know, there's a federal question. It's important for that to be decided in federal court. They gave the right to removal. And yet, we still have abstention as an option to the district court's discretion in those cases. Under 1441? Yes, sure. Now, 1442, I think, is the outlier to the extent that it holds. Because courts are, understandably, quite concerned about federal officials being hauled before state courts. I mean, we're also concerned about state officials who are being sued for doing things that are required by federal law. I mean, I guess I could point to the political history of reconstruction for the basis of that here. I think there are differences in degree, Your Honor. No doubt courts are always concerned wherever Congress has expressed some degree of concern. If I could just weigh in. It seems like RNC talks about the ability to remove by looking at the nature of the NDRA in combination with the statute that it amends. In other words, it's talking about the statutes generally, not the allegations per se in the case. And it talks about the basis of removal there. I mean, if the appellants are right, and I guess this is their position, you could have the imposition, and so long as it's not in bad faith, of one of these statutes in a county matter in some rural county in my home state of South Carolina over the maintenance commission, and even if the issues are all state law, a local state law election, that means every single one of those in the country comes to federal court? That does seem like a problem to me, Your Honor, and I think that's a very good reason for this court to recognize that abstention provides a good avenue for district courts to make sure that doesn't happen. Can I take you back to the 1443-42 distinction? What do I do about the fact that BP just constantly toggles back and forth and treats them as the same thing? Well, Your Honor, I don't think that BP was confronting this question, as Your Honor has recognized. Actually, doesn't the recent case about arbitration stays that the court has also equate 1442 and 1443? You know what I'm talking about? I vaguely recall the case, but I don't think I can have it again. I feel like every Supreme Court decision I've seen in the last X amount of years that talks about 1442 or 1443 is like, these are two statutes that are basically the same, and they arise out of the same history and the same concerns. The Supreme Court constantly equates these two statutes. And I don't think the Supreme Court has ever held that abstention is categorically inappropriate. No, I'm just saying, if you assume that you can't abstain under 1442, why would you be able to abstain under 1443? Again, because I think 1442 is the outlier. I don't know how we distinguish 1443 from 1441 or 1331 or 1332. Another data point in this is different, for sure, because what the removed case is our recent case of lines. Now, again, we don't have a removal under the statutes here, so I don't want to overstate it, but, you know, we've got pretty serious federal interests there. I mean, the election calls and the equal protection calls, and, you know, we at least did one form of removal of our abstention there. I think you're right, Your Honor. Wise directly contradicts the argument made by the other side that this Court cannot allow abstention in voting rights cases. That's also directly contradicted by the Fifth Circuit opinion of the Texas Democratic Party, which collects a number of authorities on this point, including Wright and Miller. Can I turn you to the abstention doctrine that you actually raised before the district court? I'd love to talk about Pullman abstention, Your Honor. I think the Supreme Court's ruling on Wednesday highlights what Pullman abstention applies here. Pullman abstention, I'm sure as Your Honor knows, requires that there be an unresolved question of state law, a decision on which could move the necessity of deciding the federal constitutional question. Okay. So let's posit that yes. Isn't one rather big difference, though, that under Pullman you don't remand the case? The federal court retains jurisdiction under Pullman, right? It does not relinquish jurisdiction. Doesn't England in all those cases say that's how Pullman abstention works? I think my friends on the other side slightly overstate that at the very least. It's inherent in the Pullman doctrine because the Pullman doctrine is that there is a federal issue before the court, and the court is abstaining to see if an unsettled question of state law can obviate that. So it has to be a stay because it can't give up its responsibility to decide the federal question before it. But Burford is more of a claim deference to state proceedings, I believe. Right. I think Burford works perfectly as the district court found. Happy to go with Burford.  Yes, I do. Okay. How about respond to the following? Burford is classically for cases about some sort of limited resource like the oil wells in Texas or a bank account in a case like Bank Markazi. And so when the court says the possibility of inconsistent orders, it isn't just meaning that a state and a federal court might reach different conclusions. It's like there's only so many wells and only so much oil in this oil field in Texas. And so if a federal court comes along and says Mary Smith can have a well, that's less oil in the well for all the other people the Texas courts decide can have wells. Right. And to the extent, I know Colorado River rejects Burford abstention, but sort of the same thing about water. Like if the federal court lets someone divert a staggering amount of water from the Colorado River, there's that much less water in the Colorado River. So you can't really decide one case without deciding other cases. How is this case like that at all? So I do not think that Burford abstention is limited to some kind of scarce resource. If memory serves, this court's opinion in Johnson v. Collins Entertainment Company applies Burford abstention. And it's all about the lawfulness of video poker and gaming regulations. So I don't think we're limited to that. Yeah, I don't think it's all about that. But isn't that the core of what Burford is really about? Not in my view, Your Honor. Okay. So I think Johnson is probably a great case to review on where Burford applies in this case. Hasn't the court pretty clearly stressed that Burford is a pretty narrow doctrine? Well, abstention is always the exception rather than the rule. It's just an exception to the district court. Okay. So one of the things the district court cites is this Wake County channeling. Haven't we literally said the fact that you channel to one specific state court is not a basis for Burford abstention? That's Educational Services Incorporated v. Maryland State Board of Higher Education. If I'm remembering the case correctly, Your Honor, it may not be sufficient, but I think it's still a relevant consideration.  But it doesn't get you there by itself. Right. For example, we still need an unresolved question of state law that is important to the public. We certainly have that here. We have state Supreme Court justices disagreeing about the merits of this case. I think that means it is a difficult enough question of state law to warrant Burford abstention. And then if we take, for example, the Supreme Court's teaching in Oregon v. Mitchell, that nothing is more essential to the perpetuation of the states and their governments than the ability to set the qualifications for their own voters. I think it is certainly an important enough issue to warrant Burford abstention. Can I ask you to go back to this mailing bracket for a moment, the North Carolina Supreme Court's dismissal order? I'm just talking about the mailing of the remand. This is the part you addressed in your brief, the mailing of the remand order. Do you have any basis to believe the remand order hadn't been mailed in Quackenbush? Because I've got to tell you, when I went pretty hard into the details of Quackenbush, it seems to me like the remand order had been mailed in Quackenbush. Your Honor, I see that my time has expired. If I may continue. Thank you, Your Honor. I don't know one way or the other whether the order had been remanded in Quackenbush. Is there anything in the Supreme Court's decision in Quackenbush that suggests the answer to that question makes even a slight bit of difference? I don't think the Supreme Court was thinking about the issue at all, as far as I can tell. How about this Court's decision in Calabash, where we also seem pretty clearly to suggest the remand order had already issued, and once again did not suggest it made any difference at all? Well, Your Honor, assuming that is the correct way to understand that case, I'm not 100% sure one way or the other whether it is, then I think that would qualify as a drive-by jurisdictional ruling, right? Okay, let me ask you another question. In what conceivable universe would it make sense to say the fact that a federal district court mailed something instantly after entering it deprives an appellate court of statutorily authorized appellate jurisdiction? Because, as Judge Kessler put it in the Sixth Circuit opinion, jurisdiction follows the file. The case can only be in one place at a time, the merits of it anyway. But that just seems clearly wrong, because BP seems to suggest that when you have a statutory right to appeal, that's not true. I don't think that's correct, Your Honor. So you think that if the district court had mailed the remand order in BP, the whole Supreme Court opinion was dicta because it turns out the case is in the state court? What are you going to do? Well, no, it wouldn't be dicta, Your Honor. Presumably, the Supreme Court would become aware of the issue and discuss it. I'm not trying to say that we don't follow Supreme Court opinions. What I'm trying to say is this court recognizes the importance of the transfer of the file in all of the transfer cases, for example. And my friends on the other side... But that's why it can't be reviewed by anybody. That's about who it can be reviewed by. I think it does matter, because in the transfer cases, for example, when the appellant in the transferor circuit seeks a 1292B permissive appeal, that's a statutory right to appeal, subject to being granted by the courts. Still, no jurisdiction to review in a transferor circuit. So our jurisdiction, then, on the court ebbs and blows based on how vivid the district court clerk report is. In a limited sense, I should say, Your Honor. That's kind of weird to me. Completely. Let me take, for example, the Fifth Circuit's opinion in Red Barn. So Red Barn says once the case has already been transferred and the transfer is effective, the file is gone. The transferor circuit lacks jurisdiction to involuntarily take the case back. But it may still have jurisdiction to try what we call the request remedy, to order the district court to request that the file be sent back by the other circuit. That's what the Fifth Circuit did in defense distributed. So I would encourage the court to take a look at defense distributed. You get the cautionary tale of how this works. The Fifth Circuit reversed a severance and transfer order. I think they did it via mandamus, but the difference shouldn't matter for these purposes. Therefore ordered the district court, please request that case back from New Jersey. The district court complied. The New Jersey judge said no. So then the Fifth Circuit tried again. There's a concurring opinion by Judge Hogue joined by Judge Elrod that says, no, no, we really mean it. We think this is completely appropriate. Please send it back. Here are all these examples we think of why this is appropriate. The New Jersey judge said no. So it goes up to the Fifth Circuit again. And this time the Fifth Circuit says, I believe the word is we have asked politely for it to come back. That is all we can do. The parties in that case argued the claims are revived. Even if the other court, even if New Jersey won't send it back, the fact that you have taken care of this transfer order and said it was wrong should revive our claims in Texas. The Fifth Circuit said no. Can I go back to one thing? I'm sorry, Judge, but we went to Pullman and then we went off it pretty quick because this has been remanded and not stayed. Other than that, I don't want to go to the merits of the Pullman argument. I've read those. But do you have a position about whether Pullman can be applied when a case has been remanded? Can you just really give me your views on that issue? I think it can be applied in that situation. Again, I think the other side has overstated the grounds to which Pullman always has to be a stay. I know that's the headline rule, but if we look, for example, at the Harris County case out of the Supreme Court, in a footnote, the Supreme Court recognized that it could order dismissal in that Pullman abstention case because it interacted with the way the state courts would be hearing the case after the abstention. So I don't think it's a hard and fast rule that no matter what's going on in the state court system, it has to only be a stay. Now, it is unusual because the core of Pullman is there are two claims. The concept calls for a stay. The Pullman abstention doesn't deny the federal court of jurisdiction. It is accommodating. It is withholding its ruling and staying in its case to allow the state court to resolve a question which would obviate the federal case. But Burford is a different concept altogether. It's just a pure federalism thing, as I understand it. Right, and we think either Burford or Pullman is sufficient. So if Your Honor is persuaded by Burford and not persuaded by Pullman, that should lead to an affirmance. If we did Pullman, you would have to say that a federal court had a federal issue before it that it was deciding and that it's going to hold on to it and remand to allow the state court to see what happens in the state court, right? Well, just in case it's not clear, that is not what we're asking for. We support what the district court did, which is remand the case. We think that is correct. We think that can be upheld under either Burford or Pullman. What's your view on 1443 abstention, under 1443? I think this gets back to a couple of issues. One was the civil action issue that you alluded to earlier. To be removable under 1443 would have to be a civil action. Your Honor alluded to the argument that mandamus is not a civil action. We think prohibition. I'm not sure. I did allude to that, but I'm probing. We've cited cases in the briefs on that, and we do think that prohibition is the flip side of mandamus. What is your response to Davies v. Corbin, which seems to suggest that a mandamus petition is a civil action, at least for purposes of the Supreme Court's appellate jurisdiction? I'm trying to remember which one Davies is. Is that the Prison Litigation Reform Act case? Well, given it's 112 U.S. 36, 1884, I very much doubt it's the PLRI. It's definitely not the PLRI. I will confess I don't know what the facts are, but it's not the PLRI. Here's the answer I can give you for sure. I recall that the other side cited three cases on this point in their brief, and I think we distinguished each one of them in a footnote in our brief, and I'm not going to do any better than that. If I might just conclude with one last thing. I just want to make clear what I think the remedy is here, if we get to it. All right. You get two minutes, just like I gave the others. Thank you. I'll try to actually make it two minutes. I'm going to try to be a little bit better on that. Yes, Your Honor. The other side's lead case on remedy is Cadence Education. It's that First Circuit opinion we talked about earlier. Cadence Education expressly recognizes there is no formal procedural mechanism for recalling a case from state court involuntarily. What it says is that you can order the district court to request the state court's cooperation in returning the case. If that were ever appropriate, it wouldn't be appropriate here, where presumably the district court would have to ask the state court, will you please send me the case back? And the state Supreme Court would say, what case? It's already been dismissed. Can I ask you on the Cadence Education? So the implication of that is, why does that just not nullify the congressionally created right to appeal a district court's remand order? Because all the district court's got to do is get it in the mail really fast. Well, it nullifies that, it nullifies Quackenbush, the interlocutory appeal. You're allowed under Quackenbush. As long as you get it in the mail fast enough. So I don't think it nullifies the appeal because it leaves the appellant, just like in Cadence Education, with the option of asking for this request remedy, saying please order the district court to ask for it back. So that's what Cadence says is, we think we have jurisdiction over the appeal. We're just very limited in what we can do about it. And I don't think that nullifies anything that Congress says any more than, I mean, all the time things happen in appeals that lead to appeals being dismissed for mootness grounds. That doesn't nullify the right to an appeal. There's certainly no prejudice to my friends on the other side here. My friends on the other side want the petition for a writ of prohibition to be denied or dismissed. It has already been dismissed. It seems to me if somebody contends that the action by the Supreme Court of North Carolina is null and void because it should have been in federal court, they can appeal the North Carolina Supreme Court to the Supreme Court of the United States. That's right. They can appeal to the Supreme Court of the United States if they can show appellate standing, which I don't think they can. And just on the, I know Your Honor brought up the nullity point with the other side. This court's opinion in Bryan, I think the 2007 version of Bryan, casts significant doubt on any theory about so-called nullity of state court action. What the state court does after a remand is effective. Is that the Walmart? I'm sorry, Your Honor? Bryan? Yeah, Bryan, B-R-Y-A-N. It's a 2007 opinion from this court. It's cited, I think, at least in the state papers. Right, right. It was the one, it was a removal under a different removal statute. Is that? Right. So there was a removal and a remand, and frankly it seems like the first, maybe Your Honor is no and I don't, it looks to me from just reading the opinion like the first time it went up, these issues weren't really fleshed out. Maybe the court wasn't aware of exactly what was going on with the remand being effective. And then they try to explain, that's in 2004 opinion. In the 2007 opinion, they try to kind of go back and recreate what's going on. And one of the things the appellants say in the 2007 version of Bryan is, we should have the federal court enjoin the state court proceedings because all the state court proceedings are a nullity. The federal court says, the Fourth Circuit says no. We're very suspicious of the nullity argument. They wind up upholding an injunction on grounds that wouldn't apply here, having to do with a pre-existing federal judgment, which would create an exception to the Anti-Injunction Act under the re-litigation exception. The re-litigation exception, of course, doesn't apply here because we don't have a federal judgment. We, in fact, have a state court judgment. It's kind of the opposite. All right. Thank you, Mr. Thompson. Thank you, Your Honor. Mr. Broad, you have two minutes. This is a different two minutes than the original two minutes. That's fair. I have just three brief points that I'd like to make on rebuttal, if I could. First, I just want to underscore Judge Hyten's questions to opposing counsel and the concession that no one in this case has been able to identify a single case where removal under 1443-2 was proper, and yet, nonetheless, a court found Burford abstention to apply. And I think that's a pretty big red flag that something went wrong. The presumption there would have to be that the removal involved some federal interest, the discrimination interest. And the question is, could a state court have its own discrimination interest being protected as opposed to some federal interest under which it's removed? Your Honor, we're invoking the refusal clause in light of this court's decision in RNC and in light of the text of that. I know, but in RNC, they had federal questions there pretty clearly, didn't they? They did, and I think we have pretty clearly federal questions here as well. Well, that's my question, and I pose those questions. I don't want to belabor that now. Okay. I'll move on to just two more quick points. First, as to the Pullman discussion, I do want to emphasize that, you know, Pullman would at least be better than what we got. I mean, in Pullman, the classic Pullman situation is a stay that would allow us to return to a federal forum, and we didn't even get that, and I think that that underscores the really severe nature of Burford's review. Despite that being the only form of abstention they actually asked for, right? Exactly, exactly. The last point that I'll make, Judge Niemeyer and Judge Quattlebaum, to your questions about sort of federalism and this concern about a potential flood of litigation, I do think that 1443 is a really unique context, and I think the federalism interests play out a little bit differently there because state officials are coming to the federal court. It's the state officials who are invoking the jurisdiction of the federal court pursuant to a congressional statute. Well, there's a lot of reasons for that, and we don't need to air them all, but. . . My respectful submission is that the arguments on the other side indicate. . . I would think the Attorney General would be fully satisfied to have his own Supreme Court determine what the law of North Carolina is, but. . . I'll just say my respectful submission is that the arguments on the other side of this case are just fundamentally inconsistent with the federal-state balance that Congress struck in the text of Section 1443, and we'd ask the Court reverse. Thank you. Thank you, Mr. Frode. Mr. Hartzell, you have a minute? Your Honors, it's important not to lose sight of the fact that Justice Riggs' victory as we stand here today is the last uncertified race in this country because of the stay of certification in this case. The interests in that stay could not be more concrete. All agree that the parties' interest in litigating that stay, Judge Foto, that all agree that the parties' and public interest is served by speed here. As Judge Griffin put it, candidates and the public have a vital interest in this election receiving finality as expeditiously as possible. The Supreme Court of North Carolina has laid out the path to avoid a conflict here. In Chief Justice Newby's concurrence, talking about the stay motion pending before this Court, the Fourth Circuit, says if the Fourth Circuit grants that stay or reverses the District Court's remand order, it will once again halt the statutory election process. I would urge this Court before next Friday, February 7th, to stay or reverse the District Court's remand order. Thank you. Mr. Dodge? Thank you, Your Honors. Just three quick points. First, with my friend's effort to distinguish 1442 from 1443, there's absolutely no statutory basis to do that. They share the same shall-be-reviewable language in 1447B, and as Judge Heitens alluded to, they are oftentimes treated interchangeably by the Supreme Court in cases like BP. Second, as to Pullman, my friend did not cite a single case from this circuit at any level where any court dismissed an action and surrendered federal jurisdiction under Pullman, not one. And I would point this Court to Aluminum Companies of America, 713F2nd at 1029, which says pretty unambiguously that the remedy for Pullman is to stay, not to surrender federal jurisdiction, and that what goes back to the state court is resolution of the state questions while the federal court retains federal jurisdiction. Can I ask you an implementation question on the Pullman point you're making right now? If we were to quasi-affirm on alternative grounds under Pullman, this is sort of what we're talking about here implicitly, right? Would the district court have to order the state courts to do anything at that point? If we said to the district court, you should abstain under Pullman, don't surrender jurisdiction, other than maybe send them a letter saying, I have resumed jurisdiction, I will consider the federal law. Would it have to order the state court not to do something? I think it would have to at least make clear that it was preserving its own jurisdiction over the federal questions that are embedded in this case under the Constitution and various federal statutes, that it was preserving its jurisdiction to resolve those and to not be prejudiced by any res judicata. Yeah, that's just preclusion, right? The reason for that reservation is to suspend the operation of the normal rules of preclusion. The ordinary remedy in this case, including in Jameson, is to order the district court to reinstate its own federal jurisdiction. So I think the answer to your question based on that case is yes. My very final point, building on what my friend just said, is that much of Judge Griffin's argument here rests on the assumption that the North Carolina courts will not be cooperative in returning this case to federal court where it belongs, under Congress's mandate in Section 1443 and 1447D. Their own case, defense distributed, recognizes that in the ordinary course, as a matter of comity and federalism, peer courts respect those requests, and there's no reason to assume that would not be the case here. All right, thank you. All right, we'll consider the arguments. We appreciate very much having the arguments. The question I have is whether it advances the ball or it split the ball up into a lot of little pieces to figure out what is the ball. But anyway, if we had anybody in the audience who could clarify this, they should stand now. Otherwise, we're going to hold you in peace. We'll come down and greet counsel and adjourn until tomorrow. This honorable court adjourns until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Toby J. Heytens